## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SETH HARRIS, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>      PETITIONER,<br>v.<br><br>PARAGON CONTRACTORS CORPORATION, BRIAN JESSOP, and DALE BARLOW;<br><br>      RESPONDENTS.<br><br>SETH HARRIS, ACTING SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR,<br><br>      PETITIONER,<br>v.<br><br>KEITH DUTSON.<br><br>      RESPONDENT. | Case No.  2:13-mc-00281 RJS<br><br><br>**DECISION AND RECOMMENDATION TO ENFORCE ADMINISTRATIVE SUBPOENAS AGAINST RESPONDENTS PARAGON AND BARLOW**<br><br><br><br>Magistrate Judge Evelyn Furse |

On April 22, 2013, the Acting Secretary of Labor, Seth D. Harris, United States Department of Labor ("Petitioner") filed two Petitions to Enforce Administrative Subpoenas ("Petitions") pursuant to 29 C.F.R. § 209 against all Respondents.  The Court consolidated the matters on April 26, 2013.  The Honorable Robert J. Shelby issued an Amended Order to Show Cause on May 3, 2013, which directed Respondents to file a written response to the Petitions no later than May 15, 2013, and to appear at a hearing on the Petitions before the undersigned on May 21, 2013.  Respondents Paragon Contractors ("Paragon") and Brian Jessop filed a response.

The Court held the May 21, 2013 hearing at which counsel for Respondents Paragon Contractors and Brian Jessop appeared and argued on their behalf.  The Court makes the following report.

**Brian Jessop**

1.  Petitioner has carried his burden to enforce the subpoena *ad testificandum* against Respondent Jessop.  Through the Petitions, Briefs in Support of Petitions, and affidavit of Joseph Doolin, District Director, Wage Hour Division, with supporting exhibits, Petitioner established that the subpoena is: (1) not too indefinite; (2) reasonably relevant to an investigation which Petitioner has authority to conduct; and (3) all administrative prerequisites have been met.  *See SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 514 (10th Cir. 1980) (citing *United States v. Morton Salt*, 338 U.S. 632 (1950)).

2.  Petitioner specifically seeks the names, ages, and contact information of all persons who participated in the pecan harvest at the Southern Utah Pecan Ranch ("SUPR"), and the name of the Bishop in the Fundamentalist Latter-day Saints ("FLDS") community at issue in November and December 2012.

3.  Once Petitioner met his initial burden of proof, the burden shifted to Respondent to show cause why he should not be compelled to comply with the subpoena *ad testificandum*.

4.  Respondent Jessop responded by stating he did not know the information sought, and therefore the Court cannot compel his testimony.

5.  The Court finds Mr. Jessop's claimed lack of knowledge disingenuous.  Mr. Jessop is the President of Paragon.  Despite Mr. Jessop's testimony regarding the difference between "ground nuts" and "tree nuts", nothing in the contract between SUPR and Paragon draws any such distinction.  Instead, the contract engages Paragon "to manage and operate the

2

pecan groves until the pecans have been harvested." (ECF No. 3-2 at 27.) Among Paragon's

duties, it agrees to provide

> i.   All labor for farming, mowing, irrigation, pruning, etc. and will promptly pay all workers.
> j.   Costs related to the nut gathering/harvesting operation.

(ECF No. 3-2 at 28.) Mr. Jessop signed this agreement on behalf of Paragon. Mr. Jessop,

through Paragon, benefits pursuant to the contract by collecting as many pecans as possible. Mr.

Jessop's claim that he thought Paragon simply left the ground nuts for SUPR to do with as it

pleased did not comport with the actual practice or the contract.

6.      Furthermore, Mr. Jessop is a member of the FLDS Church and lives in Hildale,

Utah, a small community. He has known Dale Barlow since they were children. Mr. Barlow

testified that the individuals in the video were "my ladies, my family, my girls" and "my

friends." Under these facts and the others elicited from Mr. Barlow and Mr. Jessop in the record,

Mr. Jessop's claim not to know a single person who harvested ground nuts at SUPR lacks

believability.

7. Similarly, the context of Mr. Jessop's denial of knowledge about the name of the

FLDS Bishop[1] in November and December makes clear Mr. Jessop simply did not want to

provide that information.

8. The Court does recognize Mr. Jessop's reluctance to testify about his religious

beliefs, his fellow members of the faith, and the structure of the church given the some of the

---

[1] The Bishop's identity has reasonable relevance to this case because the Department of Labor obtained a recording stating as follows: "Good afternoon, this is a message from the Bishop's Office. This is a call for all schools to take the rest of the week off of school to help with the nut harvest." (ECF No. 3-1 at 3.) Determining whether this message is real, who sent it, and who authorized it, has relevance to the investigation.

legal issues facing the FLDS Church and some of its members.  Nonetheless, the Department of Labor has broad administrative subpoena powers.  *See generally Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186 (1946).  Therefore, Mr. Jessop must answer the questions posed about the identities of those harvesting nuts and the FLDS Bishop.

Consequently, the undersigned recommends that:

1. The District Court find that Respondent Jessop failed to show cause why he should not be compelled to comply with Petitioner's subpoena *ad testificandum*;

2. The District Court order Respondent Jessop to come to Courtroom Number 477 at the U.S. District Court for the District of Utah, Central Division, located at 350 S. Main Street, Salt Lake City, UT, 84101, to provide testimony related to Wage Hour's investigation, with accessibility to the undersigned should intervention from the Court become necessary, no later than 45 days after the District Court adopts this Report and Recommendation;

3. The District Court further order that the running of the applicable statute of limitations under the Fair Labor Standards Act is tolled from January 31, 2013, the date Respondent Jessop should have produced the subpoenaed information, until such time as Petitioner notifies the District Court that Respondent has complied with the District Court's order enforcing the subpoena.

**Paragon Construction**

1. Petitioner has carried his burden to enforce the subpoenas *duces tecum* against Respondent Paragon.  Through the Petitions, Briefs in Support of Petitions, and affidavit of Joseph Doolin, District Director, Wage Hour Division, with supporting exhibits, Petitioner established that the subpoenas are: (1) not too indefinite; (2) reasonably relevant to an

4

investigation which Petitioner has authority to conduct; and (3) all administrative prerequisites have been met.  *See Blackfoot*, 622 F.2d at 514 (citing *Morton Salt*, 338 U.S. 632).

2.      Petitioner specifically seeks the names, ages, and contact information of all persons who participated in the pecan harvest at SUPR, and the name of the Bishop in the FLDS community in November and December 2012.  In addition, Petitioner seeks documentation as set forth in Joseph Doolin's Affidavit.  (ECF No. 3-1 at 8–9.)

3.      Once Petitioner met his initial burden of proof, the burden shifted to Respondent to show cause why it should not be compelled to comply with the subpoenas *duces tecum*.

4.      Respondent Paragon responded by stating it did not know the information sought, does not have the documentation sought, and therefore the Court cannot compel either the testimony or documentation.

5.      Respondent Jessop is Paragon's President.  The Court finds Paragon's claimed lack of knowledge disingenuous for the reasons stated with respect to its President, Mr. Jessop.

6.      The Court finds Paragon's claimed lack of documents more plausible, but notes as follows.  While this assertion appears dubious, the Court can imagine a situation where an entity or person would intentionally not document its use of child labor.  If no documentation exists, no order compelling its production will have any effect.  Nonetheless, given comments made in argument, during testimony, and in the briefing, the Court is not convinced no such documents exist.  Specifically, the Department of Labor observed children handing in slips of paper as they departed from SUPR.  Paragon has an obligation to produce documents in its "possession, custody or control if that party has actual possession, custody or control of the materials '*or* has the legal right to obtain the documents on demand.'"  *Klesch & Co. v. Liberty Media Corp.*, 217

F.R.D. 517, 520 (D. Colo. 2003) (quoting *Resolution Trust Corp. v. Deloitte & Touche*, 145

F.R.D. 108, 110 (D. Colo. 1992)).  Documents in the possession of a party's agents frequently

fall under control of that party.  Dale Barlow acted as Paragon's agent in inviting the FLDS

community, and in particular those of "school ages" to harvest nuts.  (ECF No. 3-3 at 9–12.)

Paragon testified that it did not have a written contract with Mr. Barlow, and Mr. Barlow is an

independent contractor for Paragon.  The Department of Labor claims Mr. Barlow is Paragon's

employee.  Either way, Paragon has possession, custody, or control of documents related to

SUPR in Mr. Barlow's possession.  Paragon does not contest its right to demand documents

relating to SUPR from Mr. Barlow.  Its contention remains no such documents exist, with the

exception of two employees it subsequently learned participated in the harvest.

Consequently, the undersigned recommends that:

1.      The District Court order Respondent Paragon to make an additional concerted

effort to search for documents responsive to Petitioner's subpoenas *duces tecum,* including those

in possession of its agents;

2.      The District Court order Paragon to document its search efforts, certify them, and

file them with the Court no later than 30 days after the District Court adopts this Report and

Recommendation;

3.      The District Court order Respondent Paragon to send a representative to

Courtroom Number 477 at the U.S. District Court for the District of Utah, Central Division,

located at 350 S. Main Street, Salt Lake City, UT, 84101, to provide testimony related to Wage

Hour's investigation, including Paragon's efforts at document collection, and the additional

known employees, with accessibility to the undersigned should intervention from the Court

become necessary, no later than 45 days after the District Court adopts this Report and Recommendation;

4.      The District Court further order that the running of the applicable statute of limitations under the Fair Labor Standards Act tolled from January 31, 2013, the date Respondent Paragon should have produced the subpoenaed information, until such time as Petitioner notifies the District Court that Respondent has complied with the District Court's order enforcing the subpoenas.

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific, written objections.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Pursuant to 28 U.S.C. § 636(b)(1)(C), the District Judge to whom this case is assigned shall make a *de novo* determination on the record of any portion of the undersigned's disposition to which specific written objections have been made.  The District Judge may accept, reject, or modify the recommended decision, receive further evidence or re-commit the matter to the magistrate judge with instructions.

DATED this 20th day of June, 2013.

BY THE COURT:

EVELYN J. FURSE
United States Magistrate Judge